United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARRISON RINEHART, | No. C 07-2558 MHP (pr) |
| Plaintiff, | **ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANTS** |
| v. | |
| GREG ADHERN - SHERIFF; et al., | |
| Defendants. | |

## INTRODUCTION

This case is now before the court for consideration of defendants' unopposed motion for summary judgment. For the reasons discussed below, the motion will be granted and judgment entered in defendants' favor.

## BACKGROUND

Plaintiff alleged in his complaint that a member of the jail staff allowed him to be attacked by another inmate by opening the door to plaintiff's cell, thereby giving the other inmate access to him. The court liberally construed the complaint to allege a cognizable claim under 42 U.S.C. § 1983 for a violation of his Eighth Amendment rights and ordered service of process on the two named defendants.

Defendants moved for summary judgment on the merits of plaintiff's Eighth Amendment claim as well as on the defense of qualified immunity. Plaintiff did not file any opposition to the motion and the deadline by which to do so passed months ago.

The following facts are undisputed unless otherwise noted.

The acts and omissions giving rise to the complaint occurred on February 11, 2007, at

1 the Alameda County Santa Rita Jail in Dublin, California.

2     Plaintiff Harrison Rinehart was an inmate at the jail. Rinehart was a convict at the
3 relevant time, as he was housed in a unit of the jail "made up exclusively of California
4 Department of Corrections and Rehabilitation inmates." Richardson Decl., ¶ 3.

5     Defendant Greg Ahern was the Alameda County Sheriff. Rinehart alleged that Ahern
6 was "in charge of overseeing the rules and regulation of Santa Rita Jail." Complaint, p. 6.

7     Defendant B. Richardson was employed as a Sheriff's Technician at the Santa Rita
8 Jail. His duties as a technician included remotely opening and closing the jail cell doors.

9     Richardson wrote a report within hours of the incident in question that explained how
10 another inmate gained access to Rinehart. The report stated the following: Inmate Carl
11 Phillips was an authorized pod worker at the jail. He was one of only three authorized pod
12 workers in housing unit # 8. It was not uncommon for a pod worker to be responsible for
13 cleaning more than one pod and it was not uncommon for a pod worker to enter the pod
14 when inmates were locked in their cells – such as routinely occurred after meals -- to retrieve
15 items from the cell of an inmate. After breakfast on February 11, 2007, Rinehart and other
16 inmates in the unit were locked in their cells in conformance with the custom. Pod worker
17 Phillips rang the dining room bell to access the housing unit, and asked technician
18 Richardson to open cell door # B-03, Rinehart's cell. Richardson did so. Since B-pod had
19 already been locked down, Richardson "was under the impression that Phillips needed to
20 collect a tray or trash from the cell. Phillips made his request calmly and provided no
21 indication that he had any confrontation with any of the inmates in B-pod during breakfast.
22 [¶] [Richardson] granted Phillips['] request and opened cell number B-03. Phillips calmly
23 walked over to the cell. Inmate Harrison Rinehart calmly stepped out of his cell to see what
24 Phillips wanted. Phillips walked up to Rinehart in an aggressive manner and started arguing
25 with Rinehart literally bumping chests with him. Rinehart began retreating backward and
26 was completely caught off guard. Without any provocation, Phillips then grabbed Rinehart
27 and the two began wrestling on the floor." Richardson Decl., Exh. A; Rinehart's inform-
28

2

ational exhibit filed October 4, 2007. When the fight started, Richardson immediately called for help from other staff. Deputy Tolero responded.

Deputy Tolero wrote a report within an hour of the fight. Tolero Decl., Exh. A. His report stated that he responded to technician Richardson's call and came upon the fighting inmates. Tolero gave verbal commands to the inmates to stop fighting and squirted them with OC spray. After the second blast of OC spray, the inmates stopped fighting.

Within hours of the fight, deputy Tolero took statements from the two inmates involved in the fight as well as two other inmate-witnesses. Deputy Tolero wrote down what each inmate told him and had the inmate sign his statement. The statement Rinehart signed stated that Phillips (whose name was not known to Rinehart at the time), came to Rinehart's cell and threatened him after breakfast, but Rinehart did not take him seriously. Rinehart stated that Phillips then went to the control room, said something through the slot into the control room, returned to Rinehart's cell; the cell door was then opened and Phillips hit Rinehart. Rinehart stated that he did not know why Phillips was mad at him, but believed that Phillips might have thought that Rinehart was trying to take his job as a pod worker. See Tolero Decl., Exh. A. Phillips' statement, on the other hand, stated that the fight was the culmination of several weeks of inmates in the pod being disrespectful to him. Phillips' signed statement also explained that the technician did not know why Phillips wanted him to open the door when he opened it. Id.

## VENUE AND JURISDICTION

Venue is proper in the Northern District of California because the events or omissions giving rise to Rinehart's claims occurred at the Santa Rita Jail in Alameda County, which is located within the Northern District. See 28 U.S.C. §§ 84, 1391(b). This Court has federal question jurisdiction over this action brought under 42 U.S.C. § 1983. See 28 U.S.C. § 1331.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and [that] the moving party is entitled to

3

judgment as a matter of law." Fed. R. Civ. P. 56(c). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, as is the situation with defendants' challenge to the Eighth Amendment claim, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (citations omitted).

Where, as is the situation with defendants' qualified immunity defense, the moving party bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial. See Houghton v. Smith, 965 F.2d 1532, 1536 (9th Cir. 1992). He must establish the absence of a genuine issue of fact on each issue material to his affirmative defense. Id. at 1537; see also Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. When the defendant-movant has come forward with this evidence, the burden shifts to the non-movant to set forth specific facts showing the existence of a genuine issue of fact on the defense.

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity

4

1 with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and
2 correct, and allegations were not based purely on his belief but on his personal knowledge).
3 Rinehart's verified complaint is considered in opposition to the motion for summary
4 judgment.

5 The court's function on a summary judgment motion is not to make credibility
6 determinations or weigh conflicting evidence with respect to a disputed material fact. See
7 T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The
8 evidence must be viewed in the light most favorable to the nonmoving party, and the
9 inferences to be drawn from the facts must be viewed in a light most favorable to the
10 nonmoving party. See id. at 631.

## DISCUSSION

A. Eighth Amendment Claim

The Eighth Amendment's prohibition of cruel and unusual punishment requires that prison and jail officials take reasonable measures for the safety of inmates. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). In particular, officials have a duty to protect inmates from violence at the hands of other inmates. See id. at 833. A prison or jail official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's safety. See id. at 834.

To be liable in a failure to prevent harm situation, the official must know of and disregard an excessive risk to inmate safety. See id. at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. See id. He need not "believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before [he] is obligated to take steps to prevent such an assault.'" Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986) (citation omitted). Before being required to take action he must, however, have more than a "mere suspicion" that an attack will occur. Id.; see, e.g., id. at

5

1  460 (summary judgment appropriate as to defendants when plaintiff "failed to come forward
2  with facts showing that these defendants had any reason to believe he would be attacked by
3  the assailant").

4  When, as here, the prisoner seeks damages against a defendant, the "inquiry into
5  causation must be individualized and focus on the duties and responsibilities of each
6  individual defendant whose acts or omissions are alleged to have caused a constitutional
7  deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). Leer explained that "it is
8  important to distinguish the causal connection required when a plaintiff seeks injunctive or
9  declaratory relief as opposed to damages." Id. In the former case, a broader and more
10 generalized approach to causation is taken. See id.

> When plaintiffs, such as the inmates, seek to hold an individual defendant personally liable for damages, the causation inquiry between the deliberate indifference and the eighth amendment deprivation must be more refined. We must focus on whether the individual defendant was in a position to take steps to avert the [harm], but failed to do so intentionally or with deliberate indifference. In order to resolve this causation issue, we must take a very individualized approach which accounts for the duties, discretion, and means of each defendant. . . . Sweeping conclusory allegations will not suffice to prevent summary judgment. . . . The prisoner must set forth specific facts as to each individual defendant's deliberate indifference.

Id. at 633-34 (citations omitted).

The dispute here focuses on technician Richardson's mental state when he acted because there is no dispute about the basic sequence of events, i.e., Richardson did open Rinehart's cell door at inmate Phillips' request. Defendants met their summary judgment burden by pointing to the absence of evidence that Richardson acted with deliberate indifference at the time he opened the cell door. Rinehart offered no evidence showing deliberate indifference or from which deliberate indifference could be inferred. This failure of proof is fatal to Rinehart's case.

There is no evidence that Phillips posed a known risk of any sort to Rinehart. Rinehart stated in his verified complaint that "Everybody 'inmates' called [inmate Phillips] special agent, because deputies use him as a 'bouncer' when other inmates get out of line." Complaint, p. 6. This reputation evidence is too generalized to help Rinehart. Even if he had

6

personal knowledge of Phillips' reputation (which is not clear from his statement), he has not shown that Richardson knew of that reputation or that the reputation was one for violence on other inmates. Although the court can consider statements in a verified complaint as evidence, the quoted statement does not raise a triable issue of fact that Phillips posed a danger to Rinehart.

Rinehart also stated in his verified complaint, in an apparent reference to technician Richardson, that "trained professional has made it clear that they allow inmates to give them orders to open other inmate's cell doors." Complaint, p. 7 (errors in source). The use of inmates workers and the practice of allowing inmate workers access to other inmates in their cells do not show or support an inference that jail staff acted with deliberate indifference to the other inmates' safety. If there was evidence of a pattern that Phillips (or any inmate worker) routinely took advantage of his position of trust to attack other inmates, a closer case might be presented, but Rinehart's statement comes nowhere close to showing that jail staff abdicated all responsibility to protect those persons in their custody.

Although Richardson opened the cell door and that permitted Rinehart and Phillips to come into physical contact with each other, one cannot reasonably infer from that fact alone that Richardson opened that door with deliberate indifference to a substantial risk to Rinehart's safety. The undisputed evidence also is inconsistent with deliberate indifference in that, as soon as the inmates began fighting, technician Richardson called for help to stop the fight.

In sum, there is an absence of evidence that Phillips was known by Richardson to pose a danger to Rinehart and an absence of evidence that Richardson acted with deliberate indifference when he opened the cell door. When the evidence is viewed in the light most favorable to Rinehart, and inferences therefrom drawn in his favor, no reasonable jury could find that defendant Richardson was deliberately indifferent to a known risk to Rinehart's safety. Defendant Richardson therefore is entitled to judgment as a matter of law on Rinehart's Eighth Amendment claim.

7

1  Defendant Ahern's entitlement to summary judgment is even clearer. There is
2 absolutely no evidence that Ahern had any personal involvement with the opening of the cell
3 door. He apparently was named as a defendant because he is in charge of the jail. There is
4 no respondeat superior liability under Section 1983, i.e. no liability under the theory that one
5 is responsible for the actions or omissions of an employee. Liability under Section 1983
6 arises only upon a showing of personal participation by the defendant. Taylor v. List, 880
7 F.2d 1040, 1045 (9th Cir. 1989). Accordingly, Sheriff Ahern is entitled to judgment as a
8 matter of law on Rinehart's Eighth Amendment claim.

B. Qualified Immunity Defense

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court set forth a particular sequence of questions to be considered in determining whether qualified immunity exists. The court must consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 201. If no constitutional right was violated if the facts were as alleged, the inquiry ends and defendants prevail. See id. If, however, "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Id. at 201.

The first step under Saucier is to determine whether there was a constitutional violation. As discussed above, the evidence in the record does not establish an Eighth Amendment violation. The analysis need not proceed to the second step of the Saucier analysis. Defendants are entitled to judgment as a matter of law on the qualified immunity defense.

8

**CONCLUSION**

For the foregoing reasons, defendants are entitled to judgment as a matter of law on the merits of plaintiff's Eighth Amendment claim as well as on their qualified immunity defense. Defendants' motion for summary judgment is GRANTED and judgment will be entered in their favor. (Docket # 12.)   The clerk shall close the file.

IT IS SO ORDERED.

Dated:   May 20, 2008

_____
Marilyn Hall Patel
United States District Judge